The Chief Justice
delivered the opinion.
This is a controversy for land, claimed by the parties, in virtueuf adverse interfering titles, and mainly tarns upon the validity of the cotry, under which the appellant, who was complainant in the court below, derives title. That entry ⅛in the aaraeof Samuel M’Millin, and was made the 87tbof December, 178S, for É70 acres ‘‘on the waters of ‘‘the north fork of Elkhoru, two miles west of the Clay “Lick, beginning at a mulberry mafk*;d S. M.; thence south “800 poles; thence west for quantity, binding on Josiah “Watson’s south line.”
The entry of Watson, on the south line of which the a* hove entry was to bind, is as follows;
“f9tA !December, 1783 — Josiah Watson enters 4000 »- “eres— ⅝-on the waters of tire north fork of Eikhoi a, two “miles west of the Clay Lick that is on the dividing ridge “b( tween Licking and the north fork of Elkhorn, begin* “mug at a sugar tree and mulberry, standing on theuesl side “of a branch, both marked &. JVI from I lienee west bOfl “poles, thence ncirtbbOO poles, thence east 800poles, thence “to live beginning.”
From an inspection of these entries, it will readily be perceived, that the description given in M’Millin’s entry, of the objects called for, is less ample than that contained in the entry of Watson, it is obvious, however, that these Were both intended to have the same beginning, am! as MN Millia’s entry expressly calls to adjoin the south line of W atson, the former must be entitled to any aid which may be derived fr< m the more ample description contained in the latter. Assuming this to be the cast, we will proceed to enquire whether the description contained in Watson’s entry, of the land intended to be appropriated by it, is sufficient, compared wit h the facts proven iu the cause, to bus* laiuil^ts a valid location.
caldn" fTl marked tree 2 mil s west of be Clay rklge °bc-the tween Esk-tto rn & Lick-if there be two Clay Inks der**™ The ridg-: to ex-smin- for the bv^le^rt'1^6 fro^both^ licks would imposean un-borona subsequent loca-
Where there is coiflicting testimony, alike unina-peactiM,num-bers must preponderate
Licking and the north fork of Eikhor'n, are conceded to ^ave ^een known by thejr respective names at apt! prior to the date of the entry, and of course the dividihg ridge, which separates the waters of those streams, must have been equally known. On that ridge, near to a place, called Hafford’», is a Clay hck, which is claimed by the apPí:^aills 9s l^e one intended by the entry, and is proveu by s'x or 6⅛⅛1 witnesses to have been generally known at the date of the entry by the name of the Clay lick,
jn ¿¡je absence, therefore, of all proof in relation to any other Clay lick on the ridge, we would have no hesitation in saying, that the call for “the Clay lick that is on the diyiding ridge between Licking and the north fork of Eikt korn,’t 'va« sufficiently precise and certain
But the proof shews that there were other Clay licks on same ridge, and one of these, situate at St rother’s, about ^ve or s>x >miles from that, near Hufford’s, is proven by at least an equal number of witnesses to have been generally known, at the date of the entry, by the name of the “Clay lick.’’ It is true that there are three or four witnesses wk° swear, that the lick at Strother’s was unknown to them by the name of the Clay lick, and that it was gcDe-ra||y called by the name of the last lick. But the number fhe witnesses in the negative ate less than that of those in the affirmative; and where the credit of witnesses is, in ether respects, equal, the weight of their testimony must be in proportion to their number. But besides that, the number of the negative witnesses is less than that of those who swear in the affirmative, the credit of the testimony of the former is weakened by the proof of the fact, that there was another lick near to the lick at Strother’s, which was generally called by the name of the last lick. For it is very improbable that two licks near to each other should have been called by the same name; a name too so singular, that it must have required very singular circumstances to have given rise to its application.
According to any legitimate mode of comparing the weight of their testimony, therefore, the preponderance is decidedly on the side of those witnesses who depose to the lick at Strother’s having been generally called by the name of “the Clay lick.” Consequently that lick would as well fit the call in the entry for “the Clay lick,” as the one near Hufford’s; and if so, the entry cannot be sustained. For, tp sustain it, would be requiring a subsequent locator to *215 bave commenced bis search at both these licks for the ldnd located, which, considering tbe distance of the licks apart, and the labor necessary to make the search at each, would evidently be exacting of him mofe than the rule, requiring reasonable diligence, demands.
f-omaining^ deceptive calls, cannot Pr8vail‘
Eut admitting the tail forthé Clay lick to be sufficiently precise and certain, and that the lick near Hufford’s wa3 the one intended by tbe entry, we should still have great difficulty in sustaining the claim. The course and distance from the lick terminates a short distánce west óf a branch running from north to south, but they do not lead to the marked trees called for, nor, according to a fair construction of the entry, were they intended to do so. For the course and distance from the liek is obviously descriptive of the situation of the land, and not of tbe marked trees. The only description given of the situation of the marked trees, is their “standing on the west side of a branch.” It is indeed strongly implied, that they were On the branch below the termination of the distance of two miles on a west direction from the lick. For the marked trees were to be the beginning, and the land was to lie north of a west line from the beginning, and west from the lick. A subsequent locator would therefore have naturally directed his search down the branch, and it would not have been unreasonable to require him to extend bis search to tbe distance of fouf hundred poles, the one half of the square of the survey. But his search would have been vain anti fruitless; for instead of being below a west course from the lick, the marked tfeés are 143 poles above it, in a direction which, from the plain import of the entry, a subsequent locator would not have thought of looking for them. But Suppose he had been led by caprice or curiosity to have searched for the trees in that direction, we cannot infer from their situation that be would bave found them. He would certainly have looked for them on or near the margin of the branch, bat instead of being there, they are fifteen and a half poles from it, in a thick forest, and the letters were marked, not on the side next the branch, but on tbe side from it, and could not have been seen by a person standing on the branch opposite to tbe trees. They might therefore well have escaped the attention of a subsequent locator, tboiigh searching for them in good faith; and if he had found them, it would bave been the result of accident lather than design.
- Tho’anen-trv may have ben decreed valid on a former occasion, and in a diffrentstate af preparation, the decision is no authority between differ en> partir Si and the dif-ft.rence of preparation renders it of little value r.s • precedent
Ri66 and Pope for appellant, Har&m and Hoggin, eon* Ira.
Upon the whole, therefore, we are of opinion the entry of YVatson is too vague and uncertain tone sustained; and the entry under which the complain ant claims, calling for the same objects, and depending upon that of Watson, must be deemed equally vague. We are aware that th® entry of Watson waa formerly supported by the decision of this court, in the case of Moore vs Watkins, Pr. Dec. 390: but it is obvious that the preparation of that cause must have been widely different from that of the present, both in relation to the two Clay licks, and to the situation of th® marked *reea. A» a precedent, therefore, it can be enti* tied to no weight, and in no other light can it have any in* finance, for the present parties Were neither parties or pri-* Ties to that suit, and cannot be concluded bv it» decision-
The decree of the circuit court, therefore, dismissing Ibe complainant’s bill, must be affirmed with costs.